205 A.2d 137.

STATE *vs.* ROBERT R. TUTALO.

DECEMBER 8, 1964.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

JOSLIN, J. This is a criminal complaint charging that the defendant "Did knowingly have in his possession a certain slip or certificate such as is used in carrying on, promoting and playing the game commonly known as policy-lottery or policy." It was tried before a justice of the superior court sitting with a jury and resulted in a verdict of guilty. The case is before us on the defendant's exceptions to the overruling of his demurrer to the complaint, to the denial of his motion for a directed verdict, to certain evidentiary rulings, to the refusal of the trial justice to charge as requested, to a certain portion of the charge to the jury, and to the denial of his motion for a new trial.

It appears that on the day of his arrest defendant was under surveillance by officer James H. Dodd, Jr. and detective Edward F. Tiernan, both members of the Providence police department. They saw defendant get out of his car and enter a cafe where, after a conversation with a man at the bar, he took from the latter some small slips of paper. He then left the cafe, entered his automobile and sat at the driver's seat. Thereupon officer Dodd who was in an unmarked car pulled alongside. He observed defendant speak to the passenger in his automobile and hand him the slips which the latter then threw out the car window. They were retrieved by detective Tiernan and given to officer Dodd. He identified them as pool or lottery slips and then placed defendant under arrest.

The defendant's exceptions number thirty-four. In his brief and argument he has presented them as raising six issues and we so treat them.

The first issue is whether G. L. 1956, §§11-19-5, 11-19-6, 11-19-7 and 11-19-8 are unconstitutional. We confine our consideration to §§11-19-5 and 11-19-6 because defendant has failed to specify the particular section, clause and provision of the federal or state constitution claimed to be violated by §§11-19-7 and 11-19-8. *Haigh* v. *State Board of Hairdressing*, 74 R. I. 106.

The exceptions raised by the first issue are 1, 24, 25, 26, 27, 29, 30 and 32. It will serve no useful purpose to quote or summarize such of those exceptions as relate to a portion of the charge as given or to the denial of some of defendant's requests to charge. Suffice it to say, if his contentions have merit, some or all of those requests should have been granted, and the charge to the jury as given was objectionable.

The defendant's challenge is that §11-19-5, when read *in pari materia* with §11-19-6, deprives him of his liberty and property without due process of law, denies him the presumption of innocence, and violates his privilege against self-incrimination. Section 11-19-5 provides in pertinent part that "whoever shall have in his possession, knowingly, any * * * slip, certificate * * * or article of any kind such as is used in carrying on, promoting, or playing the game commonly known as policy-lottery or policy, shall, upon conviction, be punished by fine * * * or imprisonment * * *." By §11-19-6, "The possession, by any person, other than a public official in the course of his duty, * * *" of any such slip, certificate or article is made "presumptive evidence of possession thereof knowingly and in violation of §11-19-5."

The claimed unconstitutionality arises, defendant argues, because under §11-19-6 proof that an accused possessed lottery slips is presumptive evidence that the possession thereof was knowingly and in violation of §11-19-5. While conceding that the opinion of this court in *State* v. *Gaines*, 32 R. I. 462, is dispositive of his challenge, defendant nonethe-

less argues that *Gaines* should not be followed because the court there did not amplify its conclusions on the constitutional considerations. He urges instead that we follow *In the Matter of Wong Hane,* 108 Cal. 680, and *Ex parte Kameta,* 36 Ore. 251. There ordinances similar to our statute were held unconstitutional.

In *Ex parte McClain,* 134 Cal. 110, however, in upholding the constitutionality of an ordinance resembling that passed on only six years earlier in *Wong Hane,* the California court cast some doubt on its prior decision saying at page 113: "If a variance shall be thought to exist between the views there expressed [Wong Hane] and those here announced, it need but be said that we are satisfied that the foregoing enunciates a sound principle of statutory construction."

In addition, the force of *Kameta,* where sole reliance was placed on *Wong Hane,* has been weakened by *Enloe* v. *Lawson,* 146 Ore. 621, where the court, without reference to *Kameta,* upheld the constitutionality of a municipal ordinance making possession of a slot machine, whether for a lawful or an unlawful purpose, a criminal offense.

The authorities relied on by defendant are, therefore, not entitled to unqualified acceptance. The weight of the authority moreover, as well as what in our opinion are the better reasoned decisions, requires that *State* v. *Gaines, supra,* be reaffirmed. *Adams* v. *New York,* 192 U. S. 585; *People* v. *Adams,* 176 N. Y. 351; *Ferguson* v. *United States,* 123 A.2d 615 (Ct. App. D.C.). To the same effect but construing statutes not substantially identical to that before us, see *Ford* v. *State,* 85 Md. 465, and *State* v. *Collins,* 63 N.J.L. 316. Our own decisions, while not lending unqualified support to the rule we adopt, do so impliedly. *State* v. *Mellor,* 13 R. I. 666; *State* v. *Higgins,* 13 R. I. 330.

The majority view rests on two settled principles. The first is the unquestioned legislative authority in the legiti-

mate exercise of the police power, and even without the sanction of a constitutional provision such as our art. IV, sec. 12, to suppress lotteries. *Stone* v. *Mississippi*, 101 U. S. 814. The second is the legislative right to prescribe evidentiary rules. *Fong Yue Ting* v. *United States*, 149 U. S. 698, 729. In the exercise of that right the legislature may, with limitations, and even in criminal cases, provide that when certain facts have been proved, they shall be prima facie or presumptive evidence of other facts. *O'Neill* v. *United States*, 19 F.2d 322; *People* v. *Cannon*, 139 N. Y. 32, 43; *Bailey* v. *State of Alabama*, 219 U. S. 219, 238.

The limitations are: There must be a natural and rational relation between the fact proved and that presumed; the fact inferred from the fact actually proved cannot be purely arbitrary or wholly unreasonable; and the accused in all events must be given the right to have the triers of fact determine guilt or innocence after giving such weight to the presumption as they shall deem proper.

Reference to the argument of the state in *Adams* v. *New York, supra,* at page 593, indicates that the question of whether the presumption of knowledge based upon proof of possession falls within such limitations was squarely before the court. Relying on authorities which included *State* v. *Higgins, supra,* and *State* v. *Mellor, supra,* the state contended that legislation making certain facts when proved prima facie evidence of the main fact is not constitutionally prohibited "provided the inference of the existence of the main fact, because of the existence of the fact actually proved, must not be merely and purely arbitrary or wholly unreasonable, unnatural or extraordinary."

That the court in finding constitutional the New York statute—a statute substantially similar to that here at issue—accepted the argument advanced by the state is evidenced in *Bailey* v. *State of Alabama, supra,* where the court, citing *Adams* v. *New York* as authority, at page 238 set forth the rules upon which we rely as follows:

"This court has frequently recognized the general power of every legislature to prescribe the evidence which shall be received, and the effect of that evidence in the courts of its own government. *Fong Yue Ting* v. *United States,* 149 U. S. 698, 749. In the exercise of this power numerous statutes have been enacted providing that proof of one fact shall be *prima facie* evidence of the main fact in issue; and where the inference is not purely arbitrary and there is a rational relation between the two facts, and the accused is not deprived of a proper opportunity to submit all the facts bearing upon the issue, it has been held that such statutes do not violate the requirements of due process of law."

The rational and reasonable relationship between the proved possession and the presumed knowledge is present here, for as the court said in *Adams* v. *New York, supra,* at page 599:

"The policy slips are property of an unusual character and not likely, particularly in large quantities, to be found in the possession of innocent parties. Like other gambling paraphernalia, their possession indicates their use or intended use, and may well raise some inference against their possessor in the absence of explanation. Such is the effect of this statute. Innocent persons would have no trouble in explaining the possession of these tickets, and in any event the possession is only *prima facie* evidence, and the party is permitted to produce such testimony as will show the truth concerning the possession of the slips."

In our opinion defendant's constitutional rights are not violated by the statutory provision that a rebuttable presumption of knowledge in violation of §11-19-5 arose upon proof of his possession of lottery slips. These exceptions are therefore overruled.

The second issue presents defendant's contention that his demurrer should have been sustained on the ground that the complaint did not allege that the possession of the lottery slips was for an unlawful purpose. The short answer is that the legislature has made it a criminal offense, sub-

ject to the exception specifically provided, for any person knowingly to have lottery slips in his possession whatever the purpose of that possession may be. It is the possession without more which constitutes the offense, and not possession accompanied by an unlawful purpose. *State* v. *Murzda,* 116 N.J.L. 219. Phrased otherwise, the court in *Ex parte McClain, supra,* at page 112 said: "In such laws it is not the *purpose* of the possession, but the *fact* of possession, which *prima facie* establishes the offense." This exception of the defendant is without merit.

The third issue which is raised by exceptions 2 through 12, are to evidentiary rulings. Officer Dodd, a member of the C. squad for approximately three years, in the course of his duties was concerned extensively with gambling matters, participated in more than 300 arrests for gambling violations, and was familiar with the methods used in recording lottery bets. Upon those qualifications he was permitted over defendant's objection to describe the nature of the lottery game, to identify the slips in issue as lottery slips, and to explain the significance of the marks thereon. His competency so to testify rested within the discretion of the justice presiding at the trial and is subject to review only for an abuse thereof. *State* v. *Douglas,* 78 R. I. 60. Upon qualifications not substantially different from those of officer Dodd, testimony by police officers of the same general character as given by him has been held admissible. *State* v. *Gaines, supra; Spriggs* v. *State,* 226 Md. 50; *People* v. *Crossland,* 9 N. Y.2d 464; *Dotson* v. *City of Birmingham,* 36 Ala. App. 85. We find no abuse of discretion by the trial justice in admitting the testimony and these exceptions are overruled.

In the fourth issue by exceptions 13 through 23 defendant claims error in the rulings of the trial justice sustaining the state's objection to questions asked of officer Dodd on cross-examination. In direct examination the witness testi-

22

fied that the game of policy lottery involves wagering that certain numbers or combinations thereof will coincide with the pari-mutuel payoffs at designated race tracks, including Suffolk Downs, as the same are regularly published in selected newspapers. When the numbers picked by the player agree with the figures published, the player is a winner. The questions to which the state's objections were sustained related generally to whether the witness knew if the race upon which the payoff figure was based had actually been either run or scheduled to run, the location of Suffolk Downs and, if wagers had been placed on the lottery slips, who had placed and received them. The scope of the cross-examination rested within the sound discretion of the trial justice. *State* v. *Campbell*, 95 R. I. 370, 187 A.2d 543; *State* v. *Kieon*, 93 R. I. 290. We are unable to say that there was an abuse of discretion here and moreover, even if there were, we cannot see how defendant was prejudiced thereby. These exceptions are overruled.

The fifth issue relates to exceptions 24, 28, 33 and 34. Those exceptions were to the denials of defendant's motions for a directed verdict, and his motion for a new trial, and to the refusal of two of his requests to charge. He concedes in his brief that they are without merit if §§11-19-5, 11-19-6, 11-19-7, and 11-19-8 are valid. In our discussion of the first issue we held §§11-19-5 and 11-19-6 constitutional and determined that the constitutionality of §§11-19-7 and 11-19-8 was not before us. Such being the case and in the light of his concession, we deem it unnecessary to consider the contentions pressed under this issue and these exceptions are overruled.

Finally by exception 31 he contends that the trial justice should have charged the jury in accordance with his request that "Merely having the alleged slip in the defendant's hand or on his person does not establish possession." In urging error defendant construes the word "possession" in §11-

19-5 as requiring that an accused either be the owner of or have a qualified property right in the lottery slips as distinguished from having them in hand. We are unable to attribute any such intention to the legislature. Its purpose, as we have already said, was to carry out the constitutional mandate to prohibit lotteries in this state. It was not concerned with whether the violator was the possessor of a property right in the lottery slips or was the custodian of such slips. Its clear intention was to make each an offender.

If the legislative intention had been otherwise it would have been unnecessary either to use the word "knowingly," thereby excusing the person whose possession was without knowledge, or to free from criminal consequences the possession by a public official in the course of his duty. The exception is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for further proceedings.

*J. Joseph Nugent*, Attorney General, *Corinne P. Grande*, Special Counsel, for State.

*Aram K. Berberian*, for defendant.